UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BOHDAN VIAZOVIK,

Petitioner,

v.

WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:26-cv-04996-JLT-CDB (HC)

(A-Number: 214-296-664)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS

(Doc. 1)

**7-Day Objection Period**

Petitioner Bohdan Viazovik, a federal immigration detainee proceeding pro se and *in forma pauperis*, initiated this action on June 29, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion for temporary restraining order ("TRO"). (Docs. 1, 4). Petitioner is in custody of Immigration and Customs Enforcement ("ICE") at the Central Valley Annex Detention Facility. (Doc. 1 ¶ 1).

On June 30, 2026, the Court denied Petitioner's TRO motion as untimely, referred the matter to the undersigned for a determination on the merits, and set a briefing schedule. (Doc. 8). Respondents filed a motion to dismiss the petition on July 21, 2026. (Doc. 9). Petitioner filed a motion to grant the petition, construed as a reply brief, on August 3, 2026. (Doc. 10).

Having reviewed the pleadings and the parties' briefing on the merits of the petition, for the reasons set forth below, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted and Respondents be ordered to facilitate the provision of a bond hearing.

## I. **Relevant Background**

Petitioner is a native and citizen of Ukraine who was lawfully admitted into the United States on May 28, 2016, with a B2 "visitor for pleasure" visa authorizing presence in the United States for a temporary period not to exceed November 27, 2016. (Doc. 9-1 at 2) (Form I-213, Record of Deportable/Inadmissible Alien ("Ex. 1")). Petitioner remained in the United States beyond the authorized period. *Id.*

Petitioner's immigration history reflects that he filed at least two Forms I-765 (Application for Employment Authorization) that were approved by U.S. Citizenship and Immigration Services ("USCIS") *after* the expiration of his B2 visitor visa: the first application filed on September 7, 2018, and the second application filed on April 25, 2022. Ex. 1 at 2. Separately, on March 25, 2024, USCIS transmitted a letter to Petitioner stating that it was withdrawing Petitioner's Temporary Protected Status ("TPS") because he had been convicted of two or more misdemeanors and that it was denying his then-pending application for TPS re-registration. *See* (Doc. 9-3) ("Ex. 3").

During the time Petitioner unlawfully remained in the United States as a visa overstay, he was arrested on December 12, 2019, for a DUI offense and for an unspecified probation violation, although the status of those charges is unknown. *Id.*; *see* (Doc. 9-2) (June 30, 2026, State of Florida criminal history record of Petitioner ("Ex. 2")). On June 1, 2022, Petitioner was arrested for possession of amphetamine, resisting an officer, driving with an expired license, and failure to register motor vehicle. *Id.* at 4-5. Although Petitioner's rap sheet notes that the "Disposition" of the charges of resisting an officer and failure to register motor vehicle was "Guilty/Convicted," the "Disposition" line associated with Petitioner's "Possession of Schedule II Substance" charge states "Adjudication Withheld." *Id.* at 6-7. On January 26, 2023, Petitioner was arrested for resisting an officer and threats against law enforcement officer and was sentenced to 18 days confinement. *Id.*

Petitioner was apprehended and detained by immigration authorities (ICE) on February 9, 2026, following his scheduled asylum interview with USCIS in Tampa, Florida. *Id.*; *see* (Doc. 1 ¶ 23). Following the commencement of his removal proceedings, on June 12, 2026, an immigration judge entered an order on Petitioner's request for custody redetermination, noting only that the

request was withdrawn. *See* (Doc. 9-4) ("Ex. 4").

Petitioner alleges that he has received no individualized custody determination or explanation for his continued detention. (Doc. 1 at 9). Petitioner attaches to his petition various documents, including an employment authorization document issued on February 28, 2024, that is valid until 2029, and other documents and forms related to his proceedings before USCIS. *See id.*

The Court takes judicial notice that an immigration judge ordered Petitioner removed on August 5, 2026, and that a case appeal was received on August 17, 2026, and remains pending.[1]

## II. Governing Authority

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

Here, Respondents do not challenge this Court's jurisdiction to adjudicate the petition (*see generally* Doc. 9) and under the authorities cited above, the Court finds it properly may exercise jurisdiction over the merits of the petition.

## III. Discussion

Regarding Respondents' argument that the petition should be dismissed for Petitioner's

---

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Sept. 3, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co*., 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

failure to exhaust administrative remedies (Doc. 9 at 3-4), the Court finds that the prudential exhaustion requirement should be waived as it would be futile for Petitioner to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), and Petitioner must remain incarcerated under that framework without individualized process. *See* (Doc. 9).[2] Petitioner therefore lacks recourse to the relief he seeks through statutory or administrative means. *See Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).[3]

**A. Petitioner's Detention is Governed By Section 1226(c)**

Although Petitioner contends that his detention is governed by 8 U.S.C. § 1231(a)(6), the undersigned agrees with Respondents (*see* Doc. 9 at 1) that § 1231 does not operate here because Petitioner is not the subject of a *final* order of removal given his appeal of the immigration judge's decision to the Board of Immigration Appeals ("BIA") remains pending.

Respondents assert that Petitioner is subject to mandatory detention under § 1226(c) given his purported felony conviction for amphetamine possession that requires detention during the pendency of removal proceedings. *See* (Doc. 9 at 1); Ex. 2 at 4-5 (June 1, 2022, arrest for 3rd degree felony amphetamine possession under Fla. Stat. § 893.13(6)(a)); *cf. id.* at 7 (noting § 893.13(6)(a) charge was for "Possession of Schedule II Substance," not specifying amphetamines).

---

[2] Although the record reflects that Petitioner requested but later withdrew his request for a bond hearing before an immigration judge (*see* Doc. 9-4), the undersigned is aware that other immigration judges at the same immigration court (Adelanto, CA) have informed immigration detainees that they lack jurisdiction to consider a detainee's bond request and thereafter invite the detainees to withdraw the bond requests. *See, e.g., Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB (E.D. Cal.), Docs. 17 & 19 (transcripts of bond hearings). Accordingly, Petitioner's withdrawal of his bond request here does not undermine the bases for waiving the prudential exhaustion requirement.

[3] Respondents' argument that Petitioner must pursue a *Joseph* hearing to exhaust his administrative remedies is not persuasive. (Doc. 9 at 2-3). The relief provided in a *Joseph* hearing is a finding that a noncitizen is not subject to 8 U.S.C. § 1226(c). *See Matter of Joseph*, 22 I. & N. Dec. 799, 799 (BIA 1999). Here, Petitioner raises a constitutional claim for violation of his due process rights. *See* (Doc. 1 at 18-19). A *Joseph* hearing would not provide Petitioner with the relief sought in his petition.

A district judge of this Court has addressed and applied the holdings of the key Supreme Court and Ninth Circuit decisions applying § 1226(c) as relevant here, and the undersigned adopts that framework herein. *See Kakkar v. Chestnut*, No. 1:25-cv-1627 JLT SAB, 2025 WL 3638298, at *3-5 (E.D. Cal. Dec. 15, 2025) (discussing section 1226(c)'s mandatory detention regime and noting it does not foreclose as-applied constitutional challenges under *Nielsen v. Preap*, 586 U.S. 392 (2019)).

Petitioner's rap sheet reflects that on June 1, 2022, he was arrested under Florida state law for 3rd degree felony "Possession of Amphetamines" in violation of Fla. Stat. § 893.13(6)(a). Ex. 1 at 3; Ex. 2 at 4-5. The same rap sheet reflects that Petitioner was ultimately charged on this arrest with "Possession of Schedule II Substance" under the same criminal statute (Fla. Stat. § 893.13(6)(a)) with a disposition of "Adjudication Withheld." Ex. 2 at 6-7. In his reply, Petitioner maintains that this conviction related to marijuana. (Doc. 10 at 4). However, the Court takes judicial notice that, at the time of Petitioner's arrest, marijuana was a Schedule I (not a Schedule II) substance. Further, marijuana is not identified as a Scheule II controlled substance under the relevant Florida statutory scheme pursuant to which Petitioner was charged. *See* Fla. Stat. § 893.13(1)(a).2 (noting that the commission of a felony in the 3d degree requires a controlled substance named or described in § 893.03(1) *et seq.*); Fla. Stat. § 893.03(1) *et seq.* (marijuana not listed as a controlled substance eligible for 3d degree felony).

The uncertainty about the disposition of Petitioner's controlled substance offense is dispelled in part by documents Petitioner includes with his petition. Specifically, those documents include a pleading from the Florida state court reflecting that Petitioner pled nolo contendere to the charge of "Possession of Schedule II Substance – A Third-Degree Felony." (Doc. 1 at 98). However, the section of the form entitled "Judgment of Guilt" presents an unmarked checkbox reflecting that the Court did not adjudge Petitioner guilty of the offense. *Id.* Instead, a section of the form entitled "Order Withholding Adjudication" presents a marked checkbox indicating that Petitioner's plea was "withheld" and he was placed on probation for a period of 18 months. *Id.*

Respondents assert that Petitioner sustained a qualifying controlled substance "conviction" for this offense subjecting him to mandatory detention under § 1226(c). "Whether a person is

'convicted' within the meaning of section 1227(a)(2)(A)(ii) depends on whether his particular set of circumstances comes within the definitional ambit of a related statute, 8 U.S.C. § 1101(a)(48)(A)." *Viveiros v. Holder*, 692 F.3d 1, 2 (1st Cir. 2012). Under § 1101(a)(48)(A), "a 'conviction' can occur in either of two ways. First, a conviction takes place if there is 'a formal judgment of guilt of the alien entered by a court.' Second, a conviction likewise occurs if '(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.'" *Id.* (internal citation omitted).

Here, although the state court presiding over Petitioner's 2022 criminal case did not enter a judgment of guilt, Petitioner pleaded nolo contendere and the judge ordered a restraint on Petitioner's liberty (18 months of probation). Accordingly, under § 1101(a)(48)(A), Petitioner sustained a conviction for a controlled substance offense such that he is subject to mandatory detention under 8 U.S.C. § 1226(c).

**B. Petitioner s Entitled to Relief Under the Due Process Clause**

Notwithstanding that Petitioner properly is subject to mandatory detention under § 1226(c), because Supreme Court precedent "does not foreclose as-applied challenges … to applications of [§ 1226(c)]," the undersigned considers Petitioner's due process claim arising from prolonged detention (Doc. 1 at 18-19). *See Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298, at *5.

In weighing Petitioner's challenge to his continuing detention by immigration authorities as a violation of his due process rights, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and … [(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

"There is … a meaningful distinction between a challenge to an initial period of detention, … and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at

2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (emphasis in original). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). "In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey*, 408 U.S. at 482).

With these authorities in mind, the undersigned finds Petitioner has an underlying, continuing liberty interest in being free from detention. Petitioner was lawfully admitted into the United States on a B2 visa on May 28, 2016, and unlawfully remained in the United States beyond the visa's expiration on November 27, 2016. After his B2 visa expired, he was granted TPS status on April 25, 2022. Separately, he was twice approved by USCIS for work authorization, and has filed applications for asylum (Form I-589), for adjustment of status (Form I-485), and for alien relative (Form I-130), all of which remain pending before USCIS as of the date of his recent detainment. Although Petitioner sustained criminal convictions resulting in sentences of incarceration in 2022 and 2023, upon his completion of service of those sentences, he remained released for a significant amount of time—approximately three years—during which time he applied for immigration relief and authorization to work in the United States. Notwithstanding that Petitioner's most recent Form I-821 application for TPS re-registration was denied and his TPS status withdrawn by USCIS on March 25, 2024, Respondents' decision to not detain or commence removal proceedings against Petitioner until 2026 reflects at least a tacit acknowledgement by immigration authorities that he was not a flight risk nor a danger to the community.

The undersigned agrees with other courts and other judges of this Court that a noncitizen who sustains a conviction for an aggravated felony and who successfully serves their sentence, including terms of court-imposed supervision without incident, maintains a liberty interest in their freedom that implicates protections under principles of procedural due process. *See Kakkar*, 2025 WL 3638298, at *5 (discussing, *inter alia*, *Perera*, discussed *infra*, which "involv[ed] a legal permanent resident, convicted of possession with intent to distribute controlled substances, released

from prison in 2015, and detained by ICE for the first time in April 2021" but "successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)" and succeeded in "raising [an] as-applied due process challenge[] to [his] detention without a bond hearing[.]"); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023) (finding liberty interest for petitioner who was released from prison in 2015 and detained by ICE for the first time in 2023); *Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *2, 5 (N.D. Cal. June 11, 2021) (finding petitioner, who was convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021, has a "grave" liberty interest).

Because Petitioner has shown he has a protected liberty interest to remain free from detention based on his release from state custody for approximately three years without action by immigration authorities to detain him, the undersigned considers what process is due before the government may terminate that liberty interest. To determine this, the undersigned weighs the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id.* at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention. He had been released from state custody for approximately three years before immigration authorities detained him and commenced removal proceedings—notwithstanding that their asserted grounds for removal (his controlled substance conviction) ripened three years earlier. He alleges (and Respondents do not dispute) that he has obtained an

authorization to work and has sought various forms of immigration relief with USCIS. Petitioner's continued liberty interest in remaining on release is undermined by his immigration detention without a bond hearing. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("Freedom from imprisonment is at the core of the Due Process Clause…. The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination. *Id*. at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Because there were no procedural safeguards to determine if Petitioner's detention was justified, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382, at *5.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."); *Kakkar*, 2025 WL 3638298, at *7 ("The government may have a significant interest in protecting the public from dangerous criminal aliens. However, such argument is undermined somewhat by the fact that Respondents waited four years to arrest the Petitioner and have not identified changed circumstances that now justify his arrest."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may detain Petitioner does not outweigh his liberty interest and the risk of erroneous

deprivation. Accordingly, this factor weighs in favor of granting a bond hearing.

In sum, the undersigned finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest in February 2026 and continuous and continuing detention thereafter, which has persisted as of the date of these findings and recommendations for more than six months.

**C. Relief**

The undersigned finds and will recommend that Respondents be ordered to facilitate a bond hearing to Petitioner consistent with § 1226(a) and the holdings in the decisions noted above (*Kakkar*, *Pham*, and *Perera*). *See Prior v. Andrews*, No. 1:25-cv-01131-JLT-EPG (HC), 2026 WL 698801, at *2 (E.D. Cal. Mar. 12, 2026) (adopting in part findings and recommendations to grant petition for writ of habeas corpus but declining to order the petitioner's immediate release) (citing *Kakkar*, 2025 WL 3638298, at *6-7, *Pham*, 2023 WL 2744397, at *1-2, and *Perera*, 2021 WL 2400981, at *4). Immediate release is not warranted because immigration authorities never previously detained and released Petitioner on any finding that he was neither a flight risk nor danger to the community. *See id*.

Further, the undersigned will recommend the government bear the burden at a bond hearing of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight or that there is a material change in his removal situation that would justify his re-detention. *See id*. at *3; *Kakkar*, 2025 WL 3638298, at *6; *Pham*, 2023 WL 2744397, at *7.

## IV. <u>Conclusion and Recommendation</u>

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.
2. Respondents be ORDERED to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *Id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention

without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

3. Respondents be ORDERED to provide notice of the hearing to Petitioner at least 72 hours before the scheduled hearing; Petitioner SHALL have the right to be represented by counsel at the hearing, and he SHALL be entitled to appear at the hearing; if counsel has filed an appearance in the immigration proceedings, counsel SHALL receive notice of the scheduled hearing at least 72 hours before the hearing.
4. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Respondents be ORDERED to release Petitioner from custody immediately and forbear from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing consistent with this order.
5. The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28

U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **September 4, 2026**

UNITED STATES MAGISTRATE JUDGE